1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

| | |
|---|---|
| AURELIO AVILES,<br><br>            Petitioner,<br><br>      v.<br><br>LACKNER, Warden,<br><br>            Respondent. | Case No.  1:14-cv-01052-LJO-GSA-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS<br><br>(ECF No. 16) |

17      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19      Petitioner filed the instant petition on June 24, 2014.  He is currently serving a sentence

20   of 27 years to life on a murder conviction sustained on October 24, 1986, in Los Angeles County

21   Superior Court.  (Motion to Dismiss, Ex. A).  He challenges a prison disciplinary hearing held on

22   September 20, 2013, in which he was found guilty of distributing a controlled substance in an

23   institution.

24      On October 22, 2014, Respondent filed a motion to dismiss the petition for lack of

25   jurisdiction and failure to state a cognizable claim for relief.  Petitioner filed an opposition on

26   November 24, 2014.  Respondent did not file a reply.

27       Petitioner's Minimum Eligible Parole Date (MEPD) was November 24, 2004.  (Motion

28   to Dismiss, Ex. 5).

1

1

## I.

2

## DISCUSSION

3

### A.     Procedural Grounds for Motion to Dismiss

4      Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

5   petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

6   entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

7   Further, the Rules Governing Section 2254 Cases permit the respondent to file a motion to

8   dismiss in lieu of filing an answer.  The Advisory Committee Notes states:

9          The revised rule does not address the practice in some districts, where the
           respondent files a pre-answer motion to dismiss the petition.  But revised Rule 4
10         permits that practice and reflects the view that if the court does not dismiss the
           petition, it may require (or permit) the respondent to file a motion.

11

12   Adv. Comm. Note to Rule 5 of the Rules Governing Section 2254 Cases (2004 adoption).

13      Thus, a respondent can file a motion to dismiss after the court orders a response.  Because

14   Respondent has not yet filed a formal answer, the Court will review Respondent's motion to

15   dismiss pursuant to its authority under Rule 4.

16

### B.     Jurisdiction

17      A federal court may only grant a petition for writ of habeas corpus if the petitioner can

18   show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a).  A habeas

19   corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his

20   confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez,

21   411 U.S. 475, 485 (1973)); Adv. Comm. Notes to Rule 1 of the Rules Governing Section 2254

22   Cases.   In contrast, a civil rights action pursuant to 42 U.S.C. § 1983 is the proper method for a

23   prisoner to challenge the conditions of that confinement rather than the fact or length of the

24   custody.   McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea,

25   931 F.2d at 574; Adv. Comm. Notes to Rule 1 of the Rules Governing Section 2254 Cases.  The

26   Supreme Court last discussed the distinction between habeas corpus and § 1983 in Skinner v.

27   Switzer, 131 S. Ct. 1289 (2011).  The Court explained:

28          When may a state prisoner, complaining of unconstitutional state

1
2
3
4
5

> action, pursue a civil rights claim under § 1983, and when is habeas corpus the prisoner's sole remedy? This Court has several times considered that question. Pathmarking here is <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). ... When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. <u>Ibid.</u> "But if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [ § 1983] action should be allowed to proceed . . . ." <u>Ibid.</u>

6
7
8

<u>Skinner</u>, 131 S. Ct. at 1298.  Further, the Court used conditional language in describing how in cases that do not "necessarily spell speedier release, however, suit may be brought under § 1983."  <u>Skinner</u>, 131 S. Ct. at 1293 (citation omitted).

9
10
11
12
13
14
15

In <u>Preiser</u>, the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  <u>Preiser</u>, 411 U.S. at 500.  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 554, 94 S. Ct. 2963 (1974), the Court held that prisoners could not use § 1983 to obtain restoration of credits because <u>Preiser</u> had held that "an injunction restoring good time improperly taken is foreclosed."

16
17
18
19

The Ninth Circuit has also wrestled with issues arising out of the interplay between habeas corpus and § 1983 jurisdiction. Ninth Circuit jurisprudence is expressed in three opinions: <u>Bostic v. Carlson</u>, 884 F.2d 1267 (9th Cir. 1989), <u>Ramirez v. Galaza</u>, 334 F.3d 850 (9th Cir. 2003), and <u>Docken v. Chase</u>, 393 F.3d 1024 (9th Cir. 2004).

20
21
22
23
24
25
26
27

In <u>Bostic</u>, the Court of Appeals reviewed district court dismissals of a series of habeas petitions filed by a petitioner who in each was challenging disciplinary actions taken against him. 884 F.2d at 1269.  Prison officials had assessed a forfeiture of good-time credits for some of the infractions, but the remainder did not carry a loss of time credits - only a term of segregated housing.  <u>Id.</u>  In each of the petitions, the petitioner sought expungement of the infractions from his disciplinary record.  <u>Id.</u>  The court "assume[d]" that habeas jurisdictions existed over all the petitions, even those challenging discipline with no attendant credit loss, stating:

28

> Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claim that he has been denied good time credits

3

1
2
3
4

> without due process of law. [citations] Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restriction of his liberty, such as disciplinary segregation, without due process of law. [citations] Habeas corpus jurisdiction also exists when a petitioner seeks expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole. [McCollum v. Miller, 695 F.2d 1044, 1047 (7th Cir. 1982)].

5
6
7

Id. at 1269 (emphasis added).  The court did not elaborate on when expungement would be "likely to accelerate" parole eligibility, or otherwise differentiate between parole eligibility and parole suitability.

8
9
10
11
12
13
14
15
16
17
18
19

In Ramirez, a prisoner brought a civil rights action under § 1983, not a habeas petition, to challenge procedures used in imposing disciplinary sanctions of ten days of disciplinary detention, 60 days loss of privileges and a referral to administrative segregation.  334 F.3d at 852-53.  He was not subject to a loss of good time credits.  Id.  He sought expungement of the disciplinary record from his file and an injunction prohibiting the state from considering it "when they fix plaintiff's terms and decide whether plaintiff should be released on parole."  Id. at 859 n. 6.  The Court of Appeals held that the favorable termination rule does not apply to prison disciplinary sanctions that do not necessarily affect the fact or length of a prisoner's confinement. Id. at 854-58.  The state had failed to show that expungement of the disciplinary finding would necessarily accelerate plaintiff's release because the parole board could still deny parole on the basis of other factors.  Id. at 859.  ("As Ramirez's suit does not threaten to advance his parole date, his challenge to his disciplinary hearing is properly brought under § 1983.").

20
21
22
23
24
25

The court stated, "Bostic thus holds that the likelihood of the effect on the overall length of the prisoner's sentence from a successful § 1983 action determines the availability of habeas corpus."  Id. at 858.  From this, the Ninth Circuit reasoned that § 1983 and habeas corpus were mutually exclusive. Importantly, the Ninth Circuit's discussion in Ramirez was focused on the determination of when § 1983 actions were available in light of the favorable termination rule. The court was not focused on the limits to habeas corpus jurisdiction.

26
27
28

In Docken, the petitioner brought a habeas corpus action to challenge the timing of his parole-eligibility reviews.  393 F.3d at 1025-26.  In summarizing Supreme Court authority, the

1   Court of Appeals held that such cases only defined the limitations on § 1983 in light of the

2   exclusive jurisdiction for certain claims only cognizable in habeas. Specifically, the Ninth Circuit

3   stated:

4               Thus, although Supreme Court case law makes clear that § 1983 is
             not available where a prisoner's claim "necessarily" implicates the
5            validity or duration of confinement, it does not set out any mirror-
             image limitation on habeas jurisdiction. *The Court's central*
6            *concern, in all of the cases cited above, has been with how far the*
             *general remedy provided by § 1983 may go before it intrudes into*
7            *the more specific realm of habeas, not the other way around.* At
             the same time, though the Court has so suggested, it has never
8            squarely held that there is an area of overlap between state habeas
             and § 1983 prisoner suits. Instead, it has policed the distinction
9            between the two remedies solely by defining the limits of § 1983,
             as in Heck, and by defining those classes of claims that must be
10           brought through habeas, as in Preiser. *Put simply, when the*
             *Supreme Court has concerned itself with the interaction between §*
11           *1983 and habeas, it has looked in only one direction.*

12   Docken, 393 F.3d at 1028 (emphasis in original).

13        Accordingly, the Ninth Circuit, citing Bostic, acknowledged, based on its own precedent,

14   that habeas jurisdiction was available in some non "core" circumstances. See Docken, at 1028-29

15   ("In [Bostic], for example, we held that 'habeas corpus jurisdiction... exists when a petitioner

16   seeks expungement of a disciplinary finding from his record if expungement is likely to

17   accelerate the prisoner's eligibility for parole.'").  Finally, in determining that claims which

18   challenged procedures that lengthen the period between parole review were potentially

19   cognizable in habeas, the court should be reluctant to constrain its jurisdiction to hear such

20   claims.  Id. (internal citations omitted).  The Docken Court held that claims "likely" to affect the

21   duration of confinement under Bostic were those "with a sufficient nexus to the length of

22   imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by

23   the Preiser Court."  Docken, 393 F.3d at 1030.

24        Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting

25   parole only if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood

26   of affecting the overall length of a prisoner's confinement. Docken, 393 F.3d at 1030–31.

27   However, the appellate court emphasized that habeas jurisdiction is absent where the challenge

28   will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez,

5

1    expunging the disciplinary action was not shown to be likely to accelerate eligibility for parole;

2    rather, success there would have meant only an opportunity to seek parole from a board that

3    could deny parole on any ground already available to it.  Id.  Therefore, the suit did not "threaten

4    to advance the parole date." Id.

5           When the Court liberally construes the instant petition, it appears that Petitioner contends

6    that expungement of the challenged 2012 prison disciplinary violation will have an effect on his

7    parole consideration hearings.  Respondent argues that expungement of the challenged 2012

8    prison disciplinary violation will have no effect on Petitioner's release date from prison because

9    he is past his minimum eligible parole date and is receiving parole consideration hearings.

10   Therefore, the Court will examine whether the prison disciplinary record is likely to accelerate

11   the prisoner's eligibility for parole.  See Ramirez, 334 F.3d at 859; Bostic, 884 F.2d at 1269.

12   Although it is possible that the disciplinary infraction may have an impact on future parole

13   consideration, such impact is purely speculative at this time.

14          The mere possibility of denial of parole at some later time, where one of the factors for

15   parole consideration is serious misconduct, does not amount to the denial of a liberty interest.

16   The U.S. Supreme Court concluded that a possible loss of credits due to a disciplinary conviction

17   was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires

18   the parole board to deny parole in the face of a misconduct record or to grant parole in its

19   absence, even though misconduct is by regulation a relevant consideration." Sandin v. Connor,

20   515 U.S. 472, 487 (1995).  The Court went on to note that "[t]he decision to release a prisoner

21   rests on a myriad of considerations," and an inmate is generally "afforded procedural protection

22   at this parole hearing in order to explain the circumstances behind his misconduct record."  Id.

23   The Court held that "[t]he chance that a finding of misconduct will alter the balance is simply too

24   attenuated to invoke the procedural guarantees of the Due Process Clause." Id.  After Sandin, in

25   order to demonstrate a liberty interest, an inmate must show that a disciplinary conviction will

26   inevitably lengthen the duration of the inmate's incarceration. Id.  In this case, Petitioner cannot

27   make such a showing.

28          The Parole Board will determine whether Petitioner should be granted parole.  The Board

1  is required by California law to consider multiple factors in assessing whether an individual

2  inmate is suitable for parole.  The Board may consider factors as wide-ranging as the original

3  crime, an inmate's criminal and social history, his conduct in prison, any psychological

4  evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and

5  its effects of the victims, as well as any parole plans he may have.  See Cal. Code Regs., tit. 15, §

6  2402(b)-(d).  Any parole decision depends on "an amalgam of elements, some of which are

7  factual but many of which are purely subjective appraisals by the Board members based on their

8  experience with the difficult task of evaluating the advisability of parole release."  Greenholtz v.

9  Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9–10, 99 S.Ct. 2100, 60 L.Ed.2d 668

10  (1979).  All relevant information available to the parole panel, positive and negative, must be

11  considered.  Cal. Code Regs., tit. 15, § 2402(b).  The presence of one negative factor does not

12  foreclose a favorable parole determination.  Id.  Rather, the ultimate decision is whether the

13  inmate will pose an unreasonable risk of danger to society if released.  See Cal. Code Regs., tit.

14  15, § 2402(a).

15        Therefore, Petitioner fails to demonstrate that his 2012 prison disciplinary violation will

16  necessarily shorten the duration of his confinement.  At this time, there is no indication from the

17  parole board that this disciplinary violation is likely to affect Petitioner's future parole

18  consideration.  Whether Petitioner's 2012 disciplinary violation will constitute one of the myriad

19  of factors that the Board will consider at a possible parole hearing, or even factor in at all in a

20  decision, is far too attenuated to invoke the protections of due process at this time.  Sandin, 515

21  U.S. at 487.  Presently, the challenged disciplinary violation can hardly be considered so pivotal

22  to the question of granting parole that one could conclude that a sufficient nexus exists between

23  it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall

24  length of Petitioner's confinement.  Docken, 393 F.3d at 1030–31.  Therefore, at this time,

25  habeas jurisdiction does not lie in this case, and the petition should be dismissed.  Ramirez, 334

26  F.3d at 859.

27  ///

28  ///

7

## II.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss be GRANTED and the petition for writ of habeas corpus be DISMISSED for lack of jurisdiction.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 11, 2014**                              **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE